AUSTIN L. ADAMS AND ANN C. HARDING, PLAINTIFFS IN ERROR, *v.* JULIA ROBERTS.

On the trial of a petition for freedom, a paper was produced, which was a copy of a deed of manumission, executed in December, 1801, by the owner of certain slaves in Virginia (and amongst them, the mother of the petitioner, to become free on the 1st of January, 1814,) to which paper the names of two persons were attached as witnesses. In January, 1802, the grantor went into court in Fairfax county, Virginia, and ordered it to be recorded; but it did not appear whether the two witnesses were then with him or not. The grantor resided in the District of Columbia.

Under these circumstances, and under the statute of Virginia, passed December 17, 1792, a prayer to the court to instruct the jury that the petitioner was not entitled to freedom was properly refused.

The mother of the petitioner becoming free on the 1st of January, 1814, the exact time of the birth of the petitioner, whether before or after that day, was a fact for the jury; and a prayer to the court which would have excluded the consideration of that fact was properly refused.

THIS case was brought up by writ of error, from the United States Circuit Court of the District of Columbia for the county of Alexandria.

Julia Roberts, a coloured woman, sued in the Circuit Court for her freedom under the following circumstances.

Anterior to the cession to the United States of that portion of Virginia which is now comprehended within the District of Columbia, Simon Summers resided in it, and was the owner of a female slave named Sarah, who, it was admitted, was the mother of Julia, the petitioner in the court below.

On the 30th of December, 1801, Summers executed a deed of manumission of several negroes, and amongst them, Sarah, then about eighteen years old, to be free on the 1st day of January, 1814; and the deed further provided that the children of Sarah should be free at the age of twenty-five years.

Before the execution of this deed of manumission, Summers had been transferred, by virtue of the cession from Virginia, to the District of Columbia. The deed concludes as follows:

As witness my hand and seal, this 30th day of December, 1801.

SIMON SUMMERS, [L. S.]

Test. CHARLES LITTLE,
      HARRISON CLEAVELAND.

At a court held for Fairfax county, 18th day of January, 1802, Simon Summers acknowledged this deed of manumission, to the several negroes therein mentioned, to be his act and deed, which is ordered to be recorded.

Test.                                WILLIAM Moss, *Clerk.*

A copy.        Test.                 S. M. BALL.

This deed was acknowledged before, and recorded in, the court of Fairfax county, Virginia, in which county Summers had lived, prior to the cession to the United States. After the cession, he became thereby a resident of Alexandria county, in the District of Columbia, without changing his domicil.

The statute of Virginia in force in Alexandria county, is the 36th section of the act of the General Assembly of Virginia, passed the 17th December, 1792, entitled " an act to reduce into one the several acts concerning slaves, free negroes, and mulattoes." Sect. 36, will be found at p. 191 of Pleasant's edition of the laws of Virginia, published in 1803, and is in the following words:

" It shall be lawful for any person by his or her last will and testament, or by any other instrument in writing under his or her hand

and seal, attested and proved in the County or Corporation Court by two witnesses, or acknowledged by the party in the court of the county where he or she resides, to emancipate and set free his or her slaves, or any of them, who shall thereupon be entirely and fully discharged from the performance of any contract entered into during servitude, and enjoy as full freedom as if they had been particularly named and freed by this act."

The original deed of manumission, after being recorded, was mislaid or lost, but a paper, admitted to be a true copy, was produced upon the trial. It was admitted that the petitioner, Julia, was the daughter of Sarah, and was, at the time the suit was brought, over twenty-five years of age.

The trial took place at May term, 1842. Much evidence was given which is imbodied in the following bill of exceptions, and which is set forth at large, because the prayer in the second bill of exceptions refers to, and is based upon it.

### 1st Bill of Exceptions.

At the trial of this cause, the petitioner having given evidence tending to show that, previous to the year 1801, Sarah, the mother of the petitioner, was the property of Simon Summers, and remained in his possession until about the year 1799, when she was placed by said Summers in the possession of Wesley Adams, who about that time married the daughter of said Summers, and who lived then, and continued to live for many years thereafter, in Fairfax county, Virginia; then gave evidence that diligent search had been made among the records of Fairfax county, Virginia, for an original deed of manumission of said petitioner's mother by said Summers; but no such original deed could be found, and that the same is lost; but that there was among said records the enrolment of a deed, whereof the annexed paper, marked A, is admitted to be a true copy, and of the certificates of acknowledgment and the recording of the same. And further offered evidence that said deed was personally acknowledged by the said Simon Summers, in the county court of the said county of Fairfax—the said slave Sarah being then there in the said county, and having always before resided in the said county. And the petitioner then read in evidence the said paper marked A, purporting to be the copy of a deed of manumission from said Summers, of the negro woman named Sarah, named therein; and then gave evidence tending to show that the petitioner was the child of said

named Sarah, and is now about 38 (28) years of age; and further gave evidence tending to show that the defendant Harding makes no claim to the petitioner in her own right, but solely by the direction of her co-defendant Adams, who is the son of the Wesley Adams above named, and his said wife the daughter of said Summers. And the petitioner further gave evidence tending to show that, about the year 1820, the said Wesley Adams brought Sarah, the petitioner's mother, to the public poor-house in Fairfax county, state of Virginia, and applied to the overseers of the poor for said county, for alimony for said Sarah as a free woman of colour, and her two small children; and that a levy was made upon said county for their support, and they were supported until the year 1826, when a levy was made for the support of said Sarah and the three children which she then had with her, but among whom the petitioner was not included; and that said levy, when raised, was placed in the hands of said Wesley Adams for their support as aforesaid. And further gave widence tending to show that Sarah passed as free for a number of years, and that Wesley Adams, about the year 1826, said that Sarah and her children were free, and that the said Adams wanted to sell the petitioner to a witness, to serve him until she should reach twenty-five years of age, when she was to go free; and that Simon Summers had given slaves to him in such a way as to be of no service to him, as they became free so soon as they became valuable. And the petitioner further gave evidence tending to prove, that at the division of the estate of Simon Summers, who died in 1836, the defendant Adams was present, and that in said division the said Sarah was brought into hotch-pot—that is, Wesley Adams was charged, as distributee of Simon Summers's estate, with the value of the services of said Sarah, up to the year 1814, when she went free; and up to which time the said Summers had allowed her to serve Wesley Adams. And the plaintiff further offered evidence to prove, that the said Simon Summers resided in the county of Fairfax before and until the 27th of February, 1801, when the county of Alexandria was erected, consisting of a part of the said county of Fairfax; and the then residence of the said Simon Summers fell within the said county of Alexandria, in the District of Columbia, without any change of his actual residence; that the slaves mentioned in the deed of emancipation had always resided in the said county of Fairfax up to the date of the said deed, and to the time of its acknowledgment as aforesaid.

The defendants then offered evidence tending to prove, that an

order was made by the overseers of the poor of the said county of Fairfax, in 1825, to demand of the said Wesley Adams the $20 advanced him for the support of Sarah's infant children.

The defendants then gave evidence tending to show that said Sarah died some years ago, on the land of John Adams, and after remaining two days there, was buried at the expense of the defendant, Austin L. Adams.

The defendants then gave evidence tending to show that at the date of the paper, marked A, viz.: 30th December, 1801, the said Simon Summers was a resident of the county of Alexandria, District of Columbia, and did not reside in Fairfax county, Virginia. But the witnesses who proved the said residence of said Summers, proved, on cross-examination, that at said last-mentioned date, the said Sarah was in the possession of Wesley Adams, in Fairfax county, Virginia; and that at said date Simon Summers owned 200 acres of woodland in said Fairfax county, and was interested in another tract of land in said Fairfax county, on which there was a house, and which was cultivated land, but which was tenanted by one Furguson; and that said Simon Summers resided before 1800, in Fairfax county, in Virginia, and never removed from the place where he then resided; but that the place of his residence was included within the lines of the District of Columbia, and that he continued to reside in the same place until his death.

Whereupon the defendants, by their counsel, prayed the court to instruct the jury, that if they shall believe, from the above evidence, that the said Simon Summers did reside in the county of Alexandria, District of Columbia, at the time of the executing and acknowledging the deed aforesaid, and continued so to reside until his death, in 1836, then that the deed of emancipation so, as aforesaid, made, executed, acknowledged, and recorded in the County Court of Fairfax county, Virginia, does not entitle the petitioner to freedom under the statute of Virginia, in such cases made and provided, entitled "An act reducing into one the several acts concerning slaves, free negroes, and mulattoes," passed the 17th December, 1792.

But the court refused to give the instruction as prayed, and to which refusal the defendants except, and pray that this their bill of exception may be signed, sealed, and enrolled, and which is accordingly done, this the 18th of May, 1842.

W. CRANCH,          [L. S.]

JAMES S. MORSELL.  [L. S.]

### 2d Bill of Exceptions.

Be it remembered, that on the trial of this cause, the petitioner and defendant having offered the evidence contained in the first bill of exceptions, and this being all the evidence adduced on the part of the petitioner and defendant aforesaid, the defendants, by their counsel, prayed the court to instruct the jury, that the testimony aforesaid, although believed by the jury, is not sufficient in law to maintain the issue joined; and therefore the law is for the defendants.

But the court refused to give the instruction so prayed, not being willing to certify that the evidence so stated as aforesaid is all the evidence adduced by the parties in the said cause, and because such an instruction would take the cause from the consideration of the jury, without giving the petitioner the benefit of the presumption which the jury might draw from the facts so given in evidence.   To which refusal the defendants except, and this their bill of exceptions is signed, sealed, and ordered to be enrolled, this 18th of May, 1842.

W. CRANCH,       [L. S.]

JAMES S. MORSELL.   [L. S.]

Upon the refusal of the court below to grant the prayers contained in the first and second bills of exceptions, the case came up before this court.

*Neale* and *Bradley*, for the plaintiffs in error.
*Brent*, sen., for the defendant.

*Neale* made the following points:

1. That the court erred in allowing the deed of manumission to be given in evidence on the part of the petitioner for the purpose of establishing her right to freedom; that said deed was, and is, wholly inoperative to establish or vest in the petitioner any such right.

2. That the court erred in allowing evidence to go to the jury tending to establish a reputation of freedom in Sarah, the petitioner's mother, as competent evidence to establish the petitioner's right of freedom, the latter basing her right on the said deed of manumission.

3. That the court erred in refusing to give the instruction prayed for in the second bill of exceptions.

4. That the court erred in accompanying their refusal to grant the prayer, in the second bill, with a refusal to certify that the evidence contained in the first bill of exceptions was all the evidence adduced in the cause, without at the same time stating that there was other

evidence adduced and not inserted in the first bill, and also showing what that evidence was, and what it tended to prove.

5. That the court erred in the further reason they gave for refusing the prayer of second bill, viz. :—" because such an instruction would take the cause from the consideration of the jury, without giving the petitioner the benefit of the presumption which the jury might draw from the facts so given in evidence."

6. That the verdict of the jury is wholly irregular and void, in not responding to the issue submitted for them to try, and in not finding damages for the petitioner, even though they might have been nominal : And was such a verdict on the issue tried, that the court were not competent to award a judgment thereon " that the petitioner recover her freedom"—and that the court erred in entering such a judgment thereon.

He contended that the deed of manumission was not valid, because it was not acknowledged in the place where the grantor resided. His residence was in the District of Columbia, and the deed was acknowledged in Fairfax county, Virginia. The law of Virginia requires it to be ·acknowledged in the county where the grantor himself resides. Old Revised Code, act of 1792, p. 191, sect. 36 ; 2 Leigh, 312.

A nuncupative will cannot emancipate. 1 Robinson's Practice, 428.

All negroes are presumed to be slaves. 1 Henning and Mumford, 141 ; Wheeler on Slavery, 31, 395.

*Brent*, for defendant in error, said :

The case in Henning and Mumford does not bear out the last position of the opposite counsel. He then argued the following points :

1. That there is no error in the judgment of the court below, as rendered ; and if there be, it cannot be corrected or reversed here, in the form presented by the record.

2. That there is no error in the refusal of the court below to give the first instruction asked by the plaintiffs in error.

3. That the court below was right in refusing the second instruction.

4. That by the law of Virginia of 1782, in force in the county of Alexandria, in the District of Columbia, all negroes are, *prima facie*, free, unless they come within the exceptions of that law ; and that

Adams et al. v. Roberts.

the *onus probandi*, as to the exceptions, rests upon those who claim them as slaves.

5. That the defendant here, if not entitled to her freedom under the law named in the last reason assigned, is entitled to it by birth; being the child of a free woman at her birth.

6. That the mother of the defendant m this court was a free woman, and passed as such, and was so recognised from the 1st of January, 1814, to her death in 1836—a period of twenty-two years; and in the absence of positive proof of emancipation, the law presumes a deed of emancipation to have been made, after so long a lapse of time.

7. That by the law of Virginia a deed of manumission may be made by an instrument of writing under seal, attested by two witnesses, and proved in any court, &c.; and that there is no time limited for its proof, and no form or manner pointed out in which it is to be proved; and that it may be done on the trial of the suit for freedom, or at any other time, or in any other form.

8. That a deed of manumission, acknowledged by a non-resident in the court of the county where the slave resides, is good and binding in law.   And

9. That if the defendant, Julia Roberts, was entitled to her freedom in any way whatever, and the same appears by the evidence in the record, she is free, and the instruction asked for in the first bill of exceptions, if it had been given by the court, could not benefit the plaintiffs in error, and its refusal is no ground for a reversal of the judgment.

In support of the 5th point, he said that Sarah, the mother of Julia, was free on the 1st day of January, 1814, and that Julia must have been born after that day; because she was twenty-eight years old when the trial took place, in May, 1842.   Besides, the lapse of twenty years authorizes a presumption of a deed of manumission.   1 Hill's S. C. Rep. 222; 2 Hill's S. C. Rep. 593; 7 Leigh, 702

There is no form prescribed for the instrument itself, the acknowledgment, or the proof.   2 Leigh, 311, 312, 318.

The original deed of manumission was not produced at the trial; but there was what was admitted to be a true copy.   It was permitted to be read in evidence, and it is too late to object to it now. The bill of exceptions does not object to its admissibility as evidence.

The law of Virginia ought to be liberally construed.   6 Randolph,

2 T

652, 657; 7 Leigh, 701, 714; 4 Leigh, 260, 264; 2 Leigh, 320; 2 Call, 270; 1 Robinson's Practice, 431.

As to Summers's right to emancipate, see 8 Peters, 238; 6 Gill and Johns. 143.

*Bradley*, for plaintiffs in error, in reply.

Virginia has taken away from non-residents the power of manumitting slaves within the state. There is no one to support them or provide for them.

If the deed was not acknowledged in the court of the county or corporation, it cannot be evidence. 2 Leigh, 314; 6 Mumford, 201; 7 Leigh, 689.

Mr. Justice WAYNE delivered the opinion of the court.

We think the court below did no err in refusing to give the instructions asked for by the defendants in either the first or second bill of exceptions.

By the statute of Virginia two modes are pointed out in which manumission by deed can be accomplished.

1. The instrument in writing under the hand and seal of the party must be attested and proved in the County or Corporation Court by two witnesses; or

2. It must be acknowledged by the party in the court of the county where he or she resides.

Either of these modes is effectual. It is stated in the bill of exceptions, and is not contradicted, that the county of Alexandria was made on the 27th of February, 1801, being composed of what had been a part of the county of Fairfax, in Virginia, and that Summers owned 200 acres of woodland in Fairfax county, and was interested in another tract of land also in said county, upon which there was a house. But it does not appear how far within the line of the District the actual residence of Summers was thrown, whether the dividing line ran through his farm, separating the house from the great body of the land, or whether the land upon which his slaves resided was a separate estate, detached from his residence. But it sufficiently appears that up to February, 1801, Summers had been accustomed to resort to the court of Fairfax county, for the transaction of business of every description, and that the jurisdiction under which he lived then became changed, without its having been done by his removal from where he had lived before.

The claimant in support of her freedom alleges, that Summers executed an instrument under his hand and seal on the 30th December, 1801, to which the names of Charles Little and Harrison Cleaveland are attached as witnesses. Upon the 18th of January, 1802, by a copy admitted to be a copy of that instrument, and not objected to when offered as evidence, it appears that Summers went into court in Fairfax county and acknowledged it to be a deed of manumission. The court ordered it to be recorded, and it was done. There is nothing in the record to show whether or not the two witnesses were present with him in court when he made this acknowledgment. If they were, the case would clearly fall within the first mode pointed out by the statute, being an instrument in writing, under the hand and seal of the party, attested and proved in the County Court by two witnesses. It is not said in what court the attestation and proof must be made, in the case of a non-resident owning slaves resident in Virginia, but we presume that in such a case the attestation and proof ought to be made in the County Court where the slave resides.

It is not necessary however to decide that question in this case, because the proof to substantiate and give validity to the instrument does not exist, but we have recited the preceding facts, because they are evidence in the case, and are connected with the paper purporting to be a copy of a deed of manumission, which was introduced to sustain the claimant's demand for freedom. This then is the copy of an original paper not denied to be such by the plaintiffs in error, and the question occurring is, how ought it to have been considered in the court below as a part of the evidence in the cause, with reference to the instructions asked? In the first instruction, the court is asked to put the case, that the deed of emancipation so as aforesaid made, executed, and acknowledged and recorded, did not entitle the petitioner to freedom, under the statute in such cases made and provided by an act, entitled an act reducing into one the several acts concerning slaves, free negroes, and mulattoes, passed December 17, 1792.

The paper in evidence was the copy of an original, the execution of which by the grantor was not denied. It was received as evidence upon proof of the loss of the original. It was forty years old. No proof of its execution was necessary; its antiquity proved it. But, it is said, the proof and attestation before the court in Virginia, to give it validity, was wanting, and that it appeared to be so upon the face of the paper given in evidence. That might, or might not be so. But it was a fact in controversy between the parties, as much so as

any other fact in the case, and the court could not be asked to instruct the jury upon their belief of another single fact, namely, the residence of Simon Summers in the county of Alexandria, that the party was not entitled to freedom under the statute of Virginia. The instruction as asked excludes all the other evidence, and puts the legal issue proposed on it upon a single fact. It excludes also, all presumptions which the jury might make from the other evidence in connection with the antiquity of the paper which was before them. The court did not err in refusing to give the first instruction.

The second instruction asked for by the defendants in the court below was, that the testimony, although believed by the jury, was not sufficient in law to entitle the petitioner to her freedom.

If the jury believed all the evidence offered, the case would have stood thus: Susan the mother of Julia was to become free on the first of January, 1814. If they believed that fact, and also believed that Julia was born after that day, she was the child of a free woman and of course free herself. The trial took place at May term, 1842. Evidence was offered to show that Julia was then about twenty-eight years old. If she was twenty-eight years of age at any period between the first of January and May, 1842, of course she was born after her mother had become free. The instruction asked the court to deprive the jury of the power of saying, she was born in that interval. This was a fact especially proper for the consideration of the jury, and the court could not have given the instruction asked by the defendant; that the testimony was not sufficient in law to entitle the petitioner to her freedom, without assuming the fact, that Julia was not born in the interval already mentioned. We think the court did not err in refusing the instruction.

The judgment of the court below is affirmed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs.