ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. ROGERS.

Opinion delivered February 14, 1910.

1. MASTER AND SERVANT—DEFECTIVE APPLIANCE.—Evidence tending to prove that the sill to which a stirrup or step on a freight car was attached was in a defective condition, and that the condition could have been discovered by proper inspection, is sufficient to establish negligence on the part of the railway company in failing to discover the defect.   (Page 568.)

2. SAME—DUTY AS TO APPLIANCES.—It is the duty of a master to exercise ordinary care and diligence to furnish its servants with reasonably safe appliances with which to work and to keep them in a reasonable state of repair.   (Page 569.)

3. SAME—DUTY AS TO INSPECTION.—It is the duty of the master to search for latent defects in appliances, but the servant is required to take notice of such defects only as are open to ordinary observation. (Page 569.)

4. SAME—ASSUMED RISK.—A servant does not assume the risk of danger created by his master's negligence unless he is aware of the negligence and appreciates the danger.   (Page 569.)

5. INSTRUCTIONS—IGNORING ISSUE.—An instruction which ignores a material issue in the case about which the evidence is conflicting, and allows the jury to find a verdict without considering that issue, is misleading and prejudicial, even though another instruction which correctly presents that issue is found in other parts of the charge. (Page 570.)

6. SAME—CONSTRUCTION AS A WHOLE.—Though the instructions in a case may be apparently conflicting, yet if, from the language used or the relation which the instructions bear to each other, they may be read without conflict and as a harmonious whole, they will be so treated. (Page 573.)

7. TRIAL—IMPROPER ARGUMENT.—Reversal of a case on account of an improper argument will not be ordered unless it appears that such argument worked a prejudice to the losing party.   (Page 577.)

8. DAMAGES—EXCESSIVENESS.—In a personal injury suit the evidence was that plaintiff was 21 years old, with a life expectancy of 41 years; he was then earning from $75 to $85 per month, and was in line of promotion with prospect of receiving much higher wages; both of his legs were amputated on account of the injury; he was in the

hospital four or five months, and endured great and prolonged pain. *Held,* that a verdict for $25,000 as damages was not excessive. (Page 576.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*W. E. Hemingway, Kinsworthy & Rhoton, James H. Stevenson, P. R. Andrews* and *S. D. Campbell,* for appellant.

1. The evidence fails to show such negligence as to make the company liable, and does show an assumed risk and such negligence on part of plaintiff as to preclude recovery. Negligence must be shown affirmatively. 79 Ark. 76; 57 Ark. 461; 26 Cyc. 1202-3-4; 116 Fed. 627; 106 Fed. 645; 1 Am. St. 22. Contributory negligence bars a recovery. 63 Ark. 427.

2. Specific objections were made to those instructions which direct a verdict for plaintiff when the question of assumed risk was entirely ignored. 20 S. W. 271; 81 *Id.* 204; 77 Ark. 307; 87 Ark. 511; 30 Ark. 362; 51 Ark. 88; 91 Am. Dec. 309; 28 Tex. 203. The vice in these instructions is not cured by considering them as a whole. 55 Ark. 393; 57 *Id.* 203; 87 *Id.* 511.

3. The measure of damages on the element of decreased earning capacity would be the present value of the same, and not a lump sum consisting of the aggregate of such amounts over a long period of time. 89 Ark. 326.

4. The remarks of counsel were highly prejudicial, and of such nature as to excite the passions and prejudices of the jury. 58 Ark. 368, 473; 61 *Id.* 130; 63 *Id.* 176; 69 *Id.* 486; 65 *Id.* 625; 70 *Id.* 305; 72 *Id.* 427.

5. The verdict is excessive. 89 Ark. 326-333-4; Scribner on Dower (2 ed.) 816; 82 Ark. 61; 76 *Id.* 190; 78 *Id.* 109.

*Smith & Blackford,* and *Brundidge & Neelly,* for appellee.

1. There was no assumed risk. An employee never assumes a risk caused by the negligent act of the master, but only the ordinary risks incident to employment which he knows of or may know by ordinary care. 67 Ark. 209; 77 *Id.* 367; 120 S. W. 151, 766, 598, 599, 601; 121 S. W. 999, 268; 119 *Id.* 73, 672.

2. There is no error in the charge. Instructions should not be considered isolated and alone, but all together in connection with all others given. 57 Ark. 208; 55 Ark. 393. The

court should not have stressed the question of assumed risk. 87 Ark. 443; 48 Ark. 333.

3. The negligence of defendant in supplying a safe road-bed, place, tools, etc., was not assumed. 88 Ark. 188.

4. No request was made by defendant as to the measure of damages. Similar instructions on the measure of damages have been approved. 65 Ark. 627.

5. Instruction 7 on assumption of risk was approved in 88 Ark. 188; 83 Ark. 321. See also 48 Ark. 333.

6. No harm was done by modifying the instructions. 48 Ark. 333.

7. A reversal will not be ordered on account of improper argument where no unfair advantage is secured nor prejudice results. 75 Ark. 67; 74 *Id.* 256; 73 *Id.* 453-8; 71 *Id.* 427; 74 *Id.* 355; 77 *Id.* 238.

8. The damages not excessive. 67 Ark. 377; 87 Ark. 443.

McCulloch, C. J. Plaintiff, Clyde Rogers, recovered judgment against the railway company for damages in the sum of $25,000 as compensation for personal injuries received while working for the company as brakeman on a freight train. In attempting to mount a moving box car the stirrup or step into which he placed his foot on the side of the car turned, his foothold gave way, and he fell under the wheels, and both legs were so badly crushed that they had to be amputated. This occurred at Tuckerman, Arkansas, about nightfall, or between sundown and dark. Some of the witnesses say it was still light enough to see, but that lanterns were lighted. The train was north-bound, and had taken a siding to allow a south-bound train to pass. After the south-bound train had passed on the main line, the head brakeman opened the switch, and the engineer started the train forward, when a drawhead on the rear end of a car pulled out and broke apart. This was car marked "W. of A. 1551." Part of the drawbar and coupling fell down on the track between the rails, and when this was discovered plaintiff and the conductor went to the place and endeavored to throw the pieces off the track so as to free the track of the obstruction, but they found them too heavy to handle. While they were working at this, it was decided to set the broken car out of the train and leave it on the side

track, and the engine with fourteen cars attached—car marked "W. of A. 1551" being the rear one—pulled forward out of the siding and backed down the other track with this car in front, the broken end being forward. As the backing cars came down the other track and approached within a few feet of where plaintiff and the conductor were working to remove the broken pieces, the conductor directed plaintiff to get on this car and help set it out. Plaintiff attempted to obey, and as he mounted the car the stirrup turned when he placed his foot in it, his handhold also loosened, and he fell under the wheels.

The stirrups are of iron, and are made to hang down under the side of the car, near the end, and are bolted to the sills. On examination of this stirrup a day or two later it was found that the bolt in one end was missing, so that the stirrup was held only by the bolt in the other end, which had also slipped down about an inch. The sills to which it was bolted were old and rotten, and made of wind-shaken timber, and there was a split where the bolt went through, which appeared to be old. Some of the witnesses said that the stirrup swung down under the side of the car, without anything apparently wrong with it to ordinary observation, but that when touched it would swing around on the one bolt under the side of the car. Others said it was slightly bent, and that one end hung around under the car. There was no evidence given by any witness to the effect that the stirrup was observed before the accident to be out of repair, or that to ordinary observation it appeared to be out of repair. Plaintiff testified that he had not noticed anything wrong with it. He stated that when he attempted to mount the car it appeared to be all right; that the stirrup was in its usual place, and that he looked at it when he ran to get on the car. He said that the first he knew of anything being wrong with the stirrup was when it gave way beneath his foot.

A car inspector for the company testified that he inspected this car, as well as all the others in the train, at Baring Cross, and that the car was in good condition and free from defects.

Defendant put in evidence from the standard book of rules two covering the duties of brakemen, as follows: "Rule 400. While on the train, brakemen are under the directions of the

conductor. It is their duty to attend to the brakes, be provided with, take care of and properly display train signals and danger signals, assist the conductor in loading and unloading freight, in inspecting cars and in all things necessary to the lighting, heating and ventilation of the cars; open and close the car doors and assist the conductor in the proper disposition of passengers and in preventing them from riding on the platform or in any wise violating the regulations provided for their safety, in preserving order and in all things requisite for the comfort of the passengers."

"Rule 401. Trainmen must examine and know for themselves that the brake-shafts and attachments, ladders, running boards, steps, handholds and other parts and mechanical appliances, which they are to use, are in proper condition; if not, report them to the proper authorities, that they may be put in order before using."

The conductor, Mr. Parker, who was introduced by defendant as a witness, testified that the common interpretation of these rules is that brakemen are required to look around the train to see if anything is the matter, but that a brakeman would not be required to make a thorough examination like a car inspector. Quoting further his testimony, he stated: "It is a general inspection of conductors and also of brakemen looking over the train for such defects as they may find. A man would not have to grab hold of every piece. It is the duty of the inspector to do that, as I understand. They have a car inspector at Argenta, and that is the last place the car inspector could have looked at it. It is the business of the car inspectors, as I understand it, to make an examination for hidden defects." This testimony was not contradicted.

It is, in the first place, insisted that there is not sufficient evidence to show that there was a defect in the car when it started on the trip, nor to sustain a charge against defendant for failing to discover the defect, if any existed. In other words, that there was no defect which defendant by the exercise of ordinary care could have discovered at the time of the inspection when the train started on the trip. We think there was sufficient evidence, however, to sustain that charge. Some of the witnesses who examined the car shortly after the accident

testified that the stirrup was loose, that the sills to which it was bolted were old and made out of wind-shaken timber, and that there was an old crack where the bolts went through. The evidence also warranted a conclusion that these defects in the stirrup and the sill to which it was bolted were not attributable to the pulling out of the drawbar when the train broke in two. Now, if this condition existed as testified by the witnesses, it justified a finding that the defects could, by the exercise of ordinary care on the part of the car inspector, have been discovered when the inspection was made at Baring Cross, and that he was guilty of negligence in failing to discover them. *St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372; *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181.

It was the duty of defendant, through its car inspector, to search for hidden defects. This is a part of the master's duty to exercise ordinary care and diligence to furnish its servants with reasonably safe appliances with which to work and to keep them in reasonable state of repair. *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes, supra.*

Counsel argue that, if there was a defect which the inspector could have discovered, it was equally open to the observation of the brakeman, and that he should not have been permitted to recover, because he, too, failed to discover it. This does not follow, for the duties of the master and of the servant are not the same. It was the duty of the master, through its inspector, to search for hidden defects, while the servant is required only to take notice of such defects as are open to ordinary observation. *Little Rock, M. R. & T. Ry. Co.* v. *Leverett,* 48 Ark. 333. Nothing in the rules of the company, as interpreted in the light of the evidence introduced in this case, imposed any greater obligation on the part of the servant or any less on the part of the master. The evidence justified the belief that the master failed to discharge its duty; it does not show that the servant failed to exercise ordinary care for his own safety.

But it is claimed that plaintiff assumed the risk of danger of the defective stirrup, and that on this account he should not

be permitted to recover. The second instruction given at appellee's request omitted any mention of the question of assumed risk, and authorized the jury to find for plaintiff upon the facts stated therein without considering that question. It was specifically objected to on that ground, and the ruling of the court is assigned as error. Was there any evidence that the plaintiff assumed the risk except under the general contract of employment?

The question of contributory negligence was, as will presently be shown, submitted to the jury on correct instructions. The controlling principles of this branch of the case were stated in a recent case as follows: "An employee, by his contract of service, impliedly agrees to assume and bear the risk of all dangers from the ordinary incidents of the service, but these do not include the dangers arising from negligent acts of his employer, unless, after he becomes aware of such negligence and appreciates the danger arising therefrom, he exposes himself to it by continuing in the service. * * * But it is not correct to say that an employee assumes the risk of danger arising from negligent acts of his employer merely because he could, by the exercise of ordinary care, have discovered the defect brought about by such negligence. This might constitute contributory negligence of an employee in failing to discover a defect, but it would not be an assumption of risk, for the doctrine of assumed risk is based upon and grows out of contract; and, before it can be said that the employee has assumed the risk of danger caused by his employer's negligence, it must appear that he was aware of the negligence and appreciated the danger. *St. Louis, I. M. & S. Ry. Co.* v. *Birch,* 89 Ark. 424; *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367. We are not now speaking of the ordinary conditions of the service as existing when the employee took service, for of these he must take notice." *St. Louis, I. M. & S. Ry. Co.* v. *Corman,* 92 Ark. 102.

Judge RIDDICK announced the same principle in the Jones case, *supra:* "The servant is not presumed to know of risks and dangers caused by the negligence of the master, after he enters the service, which change the conditions of the service. If he is injured by such negligence, he cannot be said to have

assumed the risk, in the absence of knowledge on his part that there was such a danger;. for, as we have before stated, the doctrine of assumed risk rests on contract; but, if the injury was caused in any part by his own negligence, he may be guilty of contributory negligence. On the other hand, if he realizes the danger, and still elects to go ahead and expose himself to it, then, although he acts with the greatest care, he may, if injured, be held to have assumed the risk."

Was there any evidence adduced in the case that plaintiff knew of the defective condition of the stirrup? None whatever. He says that he did not notice the defect, and there is no proof of any defect which, before the accident, was open to ordinary observation. He could have stooped down and examined the fastenings of the stirrup closely, as the car inspector should have done; but he. was not required to do that, and did not assume the risk of the danger by failing to do it. Some of the witnesses who examined the stirrup after the occurrence say it was slightly bent, and one that it turned in under the car; but there is no evidence that this condition existed before the accident. It is probable that, when plaintiff put his foot in the stirrup and threw his weight on it, it gave way because of the defective fastenings and turned around out of place, in the condition in which the witnesses found it the next day. Because it was subsequently found in this condition does not warrant the inference, in the absence of other proof and under the circumstances in this case, that it was in that condition when plaintiff placed his foot in it. We do not overlook the fact that one of defendant's witnesses who never saw the car, but who testified as an expert, said that a stirrup of this kind is on the car in plain view, and that there is nothing to prevent a brakeman from seeing it if it is loose. This witness, however, did not state that because one of the bolts was out of the stirrup, or because the sills were rotted or split so that the bolts were likely to drop out at any time, it was such a defect as was open to ordinary observation. We are therefore of the opinion that the court did not err in failing to properly submit the question of assumed risk. Instruction number two, of which appellant complains, permitted plaintiff to recover only on condition that defendant was guilty of negligence; and if the jury

found defendant guilty of negligence, there is no evidence of any assumption of risk.

We come next to the question of contributory negligence. The court gave the following instructions at plaintiff's request:

"2. The jury are instructed that it was the duty of the defendant railroad company to exercise ordinary care and prudence to provide the plaintiff, Rogers, with cars having reasonably safe appliances for his use in the discharge of his duty as a brakeman; and if you believe from the evidence that the plaintiff was injured by reason of the failure of said defendant railroad company to exercise such care and prudence in furnishing cars having reasonably safe appliances for going upon them, when it became necessary in the discharge of his duty, and that he was injured as the direct and proximate result thereof, and that the plaintiff at the time was engaged in the performance of his duties as an employee of said defendant company, and that said plaintiff was not guilty of such negligence as contributed to his injury, then it will be your duty to return a verdict in favor of the plaintiff."

"3. The jury are instructed that by the term 'proximate cause' is meant the efficient cause, without which the injury would not have happened."

"4. The jury are instructed that if you believe, from the greater weight of testimony in this case, that the plaintiff, while working as a brakeman for the defendant company, was injured by either falling or slipping from one of the defendant's cars or a car hauled by the defendant, and that such fall or slipping was caused by an iron step being loosened at one end, and that such iron step was not properly fastened at both ends, and that the condition of said step was known to said defendant railroad company, or might have been known by reasonably careful inspection of the same, before the injury, then you may find for the plaintiff."

"5. If the defendant company relies upon the plaintiff's contributory negligence as a defense, then the burden rests on the defendant to establish such contributory negligence, unless it appears from the testimony introduced in behalf of the plaintiff."

The court gave numerous instructions on the subject of

assumption of risk and contributory negligence, in other parts of the charge, at the request of both plaintiff and defendant. Defendant objected to instruction number two specifically on the ground that it ignored the question of assumed risk; and specific objections were made to instruction number four on the ground that it ignored both the questions of assumed risk and contributory negligence; and instruction number five was specifically objected to on the ground that it erroneously stated the rule of evidence applicable to the case.

It has been decided by this court in an unbroken line of cases that an instruction which ignores a material issue in the case about which the evidence is conflicting, and allows the jury to find a verdict without considering that issue, is misleading and prejudicial, even though another instruction which correctly presents that issue is found in other parts of the charge. Where the instructions are thus conflicting, it is impossible for an appellate court to tell which of them the jury followed, and such an error calls for a reversal. Separate and disconnected instructions, each complete in itself and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole. *Selden* v. *State,* 55 Ark. 393; *Goodell* v. *Bluff City Lbr. Co.,* 57 Ark. 203; *Rector* v. *Robins,* 74 Ark. 437; *Fletcher* v. *Eagle,* 74 Ark. 585; *St. Louis & N. A. Rd. Co.* v. *Midkiff,* 75 Ark. 263; *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 224; *Bayles* v. *Daugherty,* 77 Ark. 201; *White River L. & W. Ry. Co.* v. *Star R. & L. Co.,* 77 Ark. 128; *Merchants' Fire Ins. Co.* v. *McAdams,* 88 Ark. 550; *Jones* v. *State,* 89 Ark. 213; *Southern Anthracite Coal Co.* v. *Bowen, ante* p. 140.

There are, however, cases, as we conceive, not inconsistent with that rule, where we have held that the law of the case can not be stated in one paragraph or instruction and, though the instructions given may be apparently conflicting, if, from the language used or the relation which the instructions are made by the whole charge to bear toward each other, it is readily seen that they are to be read together without conflict and as a harmonious whole, and they can be so read, then it is our duty to so treat them. *Arkadelphia Lumber Co.* v. *Posey,*

74 Ark. 377; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458; *St. Louis S. W. Ry. Co.* v. *Graham,* 83 Ark. 61; *Pettus* v. *Kerr,* 87 Ark. 396; *Burke* v. *Sharp,* 88 Ark. 433.

It is seen that in instruction number two quoted above the court included the question of contributory negligence, and made the plaintiff's right to recover depend upon his own freedom from negligence which contributed to his injury. The court also followed instruction number four with one on the subject of contributory negligence, number five, as well as gave several others on the same subject at the request of both parties. Instructions numbers four and five, on account of their juxtaposition, must be read together, practically as paragraphs of the same instruction. They are separated only by the figure indicating the number of the latter. In fact, instructions number two, three, four and five all relate to the same subject, and should be read together. If asked to do so, the court would doubtless have stricken out the figure separating four and five, so as to let them appear to be one instruction. Instead of asking this, defendant contented itself with an unfounded objection to number five. The objection to these instructions is not, we think, well taken. *Arkansas Midland Ry. Co.* v. *Rambo,* 90 Ark. 108.

Numerous objections were made to the closing argument of plaintiff's counsel, and exceptions were duly saved. One objection was to a reference to the absence of a car inspector named McAlister, who is said to have inspected the car at Argenta or Baring Cross. When the case was called for trial, defendant moved for a continuance to procure the attendance of a witness named Estes, who was a car inspector. His testimony was set out in the motion, and showed that if present he would testify that he inspected car "W. of A. 1551" and the other cars in the train at Baring Cross when they started on this trip, about twelve hours before the accident, and that the car was in good condition and free from defects. The court overruled the motion for continuance, but permitted defendant to read to the jury the statement in the motion as the deposition of Estes. In addition to this, the court permitted defendant to prove by another car inspector, Reynolds, the record of inspection showing that this car had been inspected when the train started on the trip and found to be in good condition.

Reynolds testified also that he thought the car had been inspected by McAlister, and that the latter was assisted by Estes. He stated that he thought McAlister was then at Pinnacle, Ark. In the closing argument plaintiff's counsel said: "If you believe Reynolds, the railroad company had it within their power to have shown this car was duly inspected at Baring Cross, and they have not done so, Reynolds stating that the man lived within twenty miles of Little Rock." We fail to discover any prejudicial effect of the statement. Reynolds was not certain that McAlister had made the inspection, but said that Estes assisted. The testimony of Estes was to the effect that he inspected the car and found it to be in good condition; but whether or not the inspection was accurate or sufficient was a question for the jury to pass on in the light of the other evidence in the case.

Another objection was to that part of the argument in which counsel said that "The first limb had been amputated and the boy is placed in the baggage car along with the chickens, the ducks and the geese, and they start on that long, sad and painful ride to St. Louis." When the plaintiff was injured at Tuckerman he was carried to Newport, where he remained over night, and one of his legs was amputated by the company's surgeon, and then he was carried to the defendant's hospital at St. Louis. On the journey to St. Louis he rode in the baggage car on a cot. The evidence shows that he suffered intensely during the journey. The other leg was amputated in St. Louis.

Now, we understand from the argument of counsel that he referred to the inconvenience of the journey and the suffering which it entailed, and not to any kind of mistreatment on the part of the company's servants. It was, of course, not correct to say that he rode with the chickens, the ducks and the geese, for there was no proof of any being in the baggage car, or that their presence would have augmented the pain. We presume the jurors were possessed of an ordinary degree of intelligence, and it is therefore impossible to conceive of any prejudicial effect which the statement could have had on their minds.

Still another objection relates to counsel's harsh criticism of the agents of the company in attempting to induce plaintiff

to give a statement as to the manner in which he was injured. Defendant proved contradictory statements made by plaintiff to the surgeon while he was laboring under great pain and mental distress, waiting for his leg to be dressed or amputated. On cross examination, the plaintiff's attorney drew out the fact that the surgeon had asked plaintiff to sign a written statement; and this was the basis of counsel's criticism. Counsel had a right to comment on the circumstances under which the alleged contradictory statements were made, but beyond that it was improper for him to go. But we have said in many cases that the reversal of a case on account of alleged improper argument must rest on an undue advantage secured by an argument which has worked a prejudice on the losing party. *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 256. The reversal does not necessarily follow from an improper argument, when it does not appear that it had a prejudicial effect. The verdict in this case does not appear to be against the preponderance of the testimony, either as to defendant's liability or the amount of the damages. Therefore, we cannot attribute the verdict to the improper argument. The same rule does not apply to improper comments like this in argument as to statements of facts not in evidence.

It is contended that the verdict is excessive. Plaintiff was twenty-one years of age, with a life expectancy of about forty-one years; and the evidence warrants a finding that he was then earning from $75 to $85 per month, and was in line of promotion with a prospect of receiving much higher wages. Both of his legs were amputated on account of the injury. He was in the hospital four or five months and endured great and prolonged pain. We will not say that under the proof the verdict of $25,000 is excessive.

Judgment affirmed.

Wood, J., (dissenting). The rule by which to determine the correctness of a single instruction, or the charge of a trial court as a whole, is announced in the opinion as follows: "An instruction which ignores a material issue in the case, about which the evidence is conflicting, and allows the jury to find a verdict without considering that issue, is misleading and prejudicial, even though another instruction which correctly presents

that issue is found in other parts of the charge. Where the instructions are thus conflicting, it is impossible for an appellate court to tell which of them the jury followed, and such an error calls for a reversal. Separate and disconnected instructions, each complete in itself and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole."

Applying this rule, which is undoubtedly sound, to the instructions given in the case at bar, it is impossible to escape the conclusion that prayer number four, granted by the court at the request of appellee, is erroneous, misleading and prejudicial. That prayer is as follows:

"The jury are instructed that if you believe from the greater weight of testimony in this case that the plaintiff, while working as a brakeman for the defendant company, was injured by either falling or slipping from one of the defendant's cars, or a car hauled by the defendant, and that such fall or slipping was caused by an iron step being loosened at one end, and that such iron step was not properly fastened at both ends, and that the condition of said step was known to said defendant railroad company, or might have been known by a reasonably careful inspection of the same before the injury, then you may find for the plaintiff."

A material issue in the case was the contributory negligence of appellee. It was one of the defenses, and it is conceded that under the evidence it was a question for the jury. The above instruction completely "ignores that issue" and "allows the jury to find for the plaintiff without considering it." A specific objection was made to it at the time, "because it directed a verdict for the plaintiff upon finding the hypothetical facts stated in the complaint, ignoring the proposition of contributory negligence." If the attention of the court had not thus been specifically directed to the error, we could have excused and overlooked it, as we did recently in the case of *Ark. Mid. Rd. Co.* v. *Rambo,* 90 Ark. 108. See also *St. Louis, I. M. & S. Ry. Co.* v. *Carter, post* p. 589. In the case of *Ark. Mid. Ry. Co.* v. *Rambo, supra,* speaking of such an omission in an instruction, we said: "It can not be doubted that, if the attention of the trial judge had been called to the

fact that the qualification in this respect had been left out of the instruction now under discussion, he would have corrected it. No such request was made, and only a formal general objection was made to the instruction. We think it was the duty of counsel to have made a specific objection." Nothing like that can be said in this case. Here a specific objection was made, and in my opinion the refusal of the court to have the instruction so amended as to recognize the defense of contributory negligence permitted the appellee to recover upon the facts stated in the instruction, notwithstanding he may have been guilty of contributory negligence. True, in other instructions the court correctly charged the jury as to contributory negligence. But the failure of the trial judge to have instruction number four corrected in the particular indicated after his attention was called specifically to the defect showed that he was willing to give instructions that were in irreconcilable conflict. For instruction number four was a complete proposition of law, stating the facts which, if found in favor of appellee, would entitle him to a verdict. If the court would not require the instruction to be amended when its attention was specifically called to the defect, what warrant have we for saying that the court would not have permitted the attorney for the appellee to argue that this instruction meant just what it said? The most prejudicial effects could be created in argument by such imperfect and misleading instructions. The jury had no certain guide, and the court refused to give one.

Where instructions are numbered separately and stand out as independent propositions, the juxtaposition of the numbers of certain instructions on a particular subject as they appear in the transcript here can make no difference. They might not have been thus presented to the jury in argument. Who can tell how few or how many instructions the attorneys dwelt upon in their argument, or in what order they presented them? In the closing argument it would have been the most natural thing, in view of the ruling of the court, for the attorney for the appellee to have singled out instruction number four, which ignored the defense of contributory negligence, and to have told the jury to find for the appellee if they found certain facts stated therein to be true. To prevent just such undue advantages as here

indicated, the charge of the court as a whole should be made harmonious. There is nothing in this record to indicate that the court even told the jury that they must consider all of the instructions together as the law of the case. It seems to me that the instructions must fall under the condemnation of the cases of our own court cited in the opinion, and these cases are but in line with the authorities generally. 2 Thompson on Trials, § 2328; 1 Brickwood's Sackett on Instructions, § 173; 1 Blashfield, Instructions to Juries, § 104; *Adams* v. *Roberts,* 2 How. 486, 496; *Russ* v. *Beck,* 24 Ala. 651, 662; *Swope* v. *Schafer* (Ky.) 4 S. W. 300; *Chappell* v. *Allen,* 38 N. W. 213, 222; *Raysdon* v. *Trumbo,* 52 Mo. 35, 38; *Maxwell* v. *H. & St. J. Ry. Co.,* 85 Mo. 96; *Cornelius* v. *Burford* (Me.), 91 Am. Dec. 309; *Miller* v. *Mc-Kinney,* 45 Ill. App. 447, cited by appellant.

The cause should be remanded, and a trial had upon correct instructions. Prayer number four in the form presented should not have been granted.