YELLOW ROSE MINING COMPANY *v.* STRAIT.

Opinion delivered April 1, 1918.

1. MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.—Appellee, an employee of appellant in a zinc mine, was injured by the falling of a can of ore; *held,* under the evidence, that a finding by the jury that the injury was caused by the negligence of another employee, would not be disturbed.

2. APPEAL AND ERROR—INSTRUCTIONS TO BE READ TOGETHER.—All the instructions given by the court are to be read together.

3. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—In a personal injury action an instruction on the question of assumed risk, although not a correct statement of the law, will not call for a reversal, where it is not prejudicial and where a proper objection thereto was not made.

Appeal from Marion Circuit Court; *John I. Worthington,* Judge; affirmed.

*J. C. Floyd* and *Blanton & Andrews,* for appellant.

1. The defenses interposed were (1) The injury was an accident unmixed with negligence; (2) defendant contributed to his injury and (3), plaintiff assumed the risk. The 1st instruction ignores the questions of contributory negligence and assumed risk. Standing alone it is clearly erroneous and is not cured by any other. 43 S. W. 715; 20 *Id.* 293; 41 N. E. 600; 35 Pac. 39; 64 Ark. 605; 74 *Id.* 437. No. 2 is open to the same objection.

2. The doctrine of master and servant requiring the master to exercise reasonable diligence to furnish the servant a safe place to work has no place here and an instruction submitting a proposition not raised by the

evidence is misleading error.   22 Ark. 477; 159 U. S. 3; 33 Ark. 350.

3.   The vice of No. 10 is patent.   It is based upon the fact that it was necessary that the master give notice of approaching danger and that it was necessary to give such notice at the time of unloading as well as after unloading.   Further it requires the jury in considering the question of assumption of risk, to base their verdict wholly upon the evidence of defendant.   It was misleading.   Authorities *supra.*

4.   Defendants No. 3 clearly submits the question of assumed risk and it was error to refuse it.

5.   Instruction No. 10 given goes only part of the way on the issues raised.   It limits the assumption of risk to the ordinary risk incident to the employment. One who knows the risk and danger, undertakes to perform the work and dispenses with the obligation of the master to furnish him a safe place to work.

6.   It was not the duty of the master to warn where master and servant are possessed of equal knowledge of the danger.   The servant assumes the risk. Defendants request No. 4 should have been given. 134 S. W. 636.

7.   No. 9 refused should have been given. 135 S. W. 455, etc.

8.   The verdict is not sustained by the evidence.   No negligence was proven; contributory negligence was and plaintiff clearly assumed the risk.   The burden was on plaintiff. 182 S. W. 525; 19 S. W. 601; 134 *Id.* 636; 145 *Id.* 218.

*Williams & Seawel,* for appellee.

1.   The testimony shows that the injury was caused by the negligence of defendants servant and the doctrine of *res ipsa loquitur* applies.   29 Cyc. 591; 86 Ark. 76, 81; 75 *Id.* 479, 491; 77 *Id.* 1; 57 *Id.* 429; *Id.* 429; 54 *Id.* 209.

2.   Under the facts there could be no assumption of risk. 199 S. W. 535; 126 Ark. 449; 93 *Id.* 88.

3. Contributory negligence is no longer a perfect defense, and there is no evidence here to support such a plea. A *prima facie* case of negligence was made. 60 Ark. 409; 38 *Id.* 357, 366. The issues were fairly submitted to a jury under proper instructions. 77 Ark. 458; 86 Ark. 76, 82; 88 *Id.* 189.

4. Instruction 1 is not erroneous. Acts 1913, p. 734; 89 Ark. 522; 92 *Id.* 502. Appellee did not assume any risk of the negligence of appellant's servant. His right to recover for negligence of his employer is plain. 116 Ark. 461; 126 *Id.* 225; *Ib.* 449, 452. No specific request was made for further instruction, nor was it properly objected to. 90 Ark. 108; *Ib.* 211; 88 *Id.* 181, 204; 93 *Id.* 589; 101 *Id.* 95.

5. Appellant asked and the court gave No. 7 and any objection to No. 1 given. 88 Ark. 172; 81 *Id.* 579; 69 *Id.* 140; 67 *Id.* 532; 59 *Id.* 317. Appellant asked and the court gave No. 2 on the question of accident and No. 9 and 10 of appellee and 13 and 14 of appellant on contributory negligence. No specific objections for any omission was made. 93 Ark. 589; 93 *Id.* 564; 83 *Id.* 61; 119 *Id.* 530.

6. Objections were waived to Nos. 2 and 8. There was no error in the modification to No. 8. 87 Ark. 101; 65 *Id.* 371; 88 *Id.* 204; 105 *Id.* 334. The objection was abandoned, 101 Ark. 398; 103 *Id.* 260. The modification was properly refused. 97 *Id.* 362; 77 *Id.* 367. See also, 103 Ark. 61; 104 *Id.* 506; 71 *Id.* 55; 53 *Id.* 117, etc.

7. The objection to No. 10 was general. 98 Ark. 264; 81 *Id.* 187; 79 *Id.* 378; 78 *Id.* 100.

8. The objections to 8, 11 and 12 were *en masse.* 76 Ark. 482; 75 *Id.* 182; 58 N. E. 747. The true rule was covered by instruction No. 10 given. 77 Ark. 367; 97 *Id.* 358; 77 *Id.* 458.

9. No. 4 was wholly inapplicable. 97 Ark. 486. No. 9 was properly refused. There was ample testimony to submit the issue of negligence to a jury. The whole case was fairly submitted to the jury.

SMITH, J.    Appellee was the plaintiff below and re-
covered judgment to compensate an injury sustained
by him while employed by the appellant zinc mining
company.    He had been engaged in removing certain
timbers underneath a tramway, over which cars of ore
were being pushed and propelled, but on the morning
of his injury he was directed to build a tipple at the
end of a certain tramway which was not then in use.
He failed to find the necessary material to build the
tipple and he reported that fact to his foreman, who
directed him to tear up a discarded tipple which was
lying near the tramway then in use, and use the material
thus secured in building the tipple.    The place in which
he was working was about eight or ten feet south of the
boulder room into which the material from the mine
was dumped, and about six feet east of the tramway.
This tramway ran north and south and connected the
tunnel in which the mining was being done at the south
terminus with the tipple over the boulder room at the
north terminus.    The tipple was a pen-shaped structure
built of heavy, two by four timbers, spiked together
to such a height that the top of the end next to the
tramway was on the level with the top of the cars and
formed a bumper for the cars to strike against in the
process of dumping.    The ore was carried on the cars
in a large two hundred pound metal can, and iron bars
were placed in the pen in such position as to keep the
can from falling through when dumped into it from the
cars.    The track to the tipple was so laid that the loaded
cars ran to it by gravity, but upon returning to the
mine, the car upon which the can sat was pushed by an
employee.    Cleats were nailed to the car in such a way as
to hold the can at an angle which caused it to dump prop-
erly.    The top of the car was flat and the can was about
thirty-two inches in diameter and thirty-six inches high.
The loaded car propelled by gravity would strike the
bumper at the tipple with sufficient force to throw the
can forward off the car into the pen where its con-
tents were emptied and this operation made it dangerous

for one to remain in close proximity to this room while the ore was falling from the can. Accordingly, when a car was released at the south end of the trestle the person releasing the car would cry out a warning, whereupon persons near the boulder room would retire some distance therefrom. As soon as the can had dumped, the employee in charge thereof would follow down to the tipple and those near the boulder room would return to their work. If any material remained in the can or any other danger arose therefrom, the employee in charge thereof, knowing that it was customary, for those beneath to return to work, would cry out a warning to those persons to return to a place of safety and would beat upon the can to dislodge its contents and would then seize the can by the top and pull it up and back from the top of the car and it would fall into its place thereon.

A can had just been dumped in this manner when appellee and others returned to the place of their employment and resumed their labors, when Vickers, an employee of the appellant company, who was operating one of these cars, in his effort to load one of the cans out of the tipple on the car, lost control of the can and it was hurled down off of the trestle upon appellee and injured him severely.

As a basis of the right of recovery, it is insisted that while appellee was performing the duties of his employment, with due care on his own part, he sustained an injury which did not result from any danger incident to the employment, but one which arose from the negligence of an employee in failing to properly operate the car or to give the customary warning which would have enabled appellee to retire to a place of safety. The appellant company denied liability and plead as a defense, assumption of risk and contributory negligence. These were the controlling issues in the case, although the instructions given at the request of both parties covered a wider range. The jury returned a verdict for a substantial sum and this appeal has been prosecuted to reverse the judgment pronounced thereon.

Appellant says that there are only two possible theories under which the judgment can be sustained. One was its failure to exercise reasonable care to furnish a safe place for appellee to work. The other is that the injury resulted from the negligence of a fellow servant. Instructions were given on both these questions, yet, under the facts of this case, these questions become the same, and, as appellant says in its brief, the question of furnishing a safe place in which to work is not really one of the issues in the case, for if the testimony supports the verdict at all, it is because the plaintiff's injury resulted from the negligence of Vickers in carelessly handling the can.

Counsel for the respective parties argue the applicability of the doctrine of *res ipsa loquitur.* But we need not now determine whether it applies under the testimony in this case, because the instructions given made no application of that doctrine. Counsel for appellant say, however, that unless the doctrine does apply, and is applied to the facts of this case, that the evidence does not support the verdict. We do not agree with counsel in this contention. It is one thing to say that a presumption of negligence arises from the proof of the injury, but it is a different matter to say that the jury may not, in its consideration of the facts of the case, reach the conclusion, or draw the inference; that the injury was occasioned by some happening which was not one of the ordinary risks of the employment, and to conclude further that some negligent act of omission or commission caused this injury.

Appellant also insists that the injury here resulted from one of the ordinary risks of the employment, and that appellee must therefore be held to have assumed the risk thereof as an incident to the employment. Counsel base on these predicates an erroneous argument that the verdict should have been directed in appellant's favor.

(1) It is true that appellee and all others working near the tipple knew there was danger from rolling

particles of ore when the cans were dumped into the pen. But warnings were given of this danger by crying out when a car was on its way from the mouth of the mine to the tipple. That warning was given here and was heeded by appellee. He was not injured by a boulder or piece of ore. The can had been dumped and all the danger usually incident to unloading a can of ore had been safely passed. The can itself had been put back upon the car which would re-convey it to the mine, and, so far as appellee knew, it had been safely put back upon the car. The construction of the can with its flat bottom together with its weight of two hundred pounds, was such as would ordinarily have prevented it from falling from the flat surface of the car when it was placed there. As one witness testified, nothing short of a wreck would ordinarily have thrown the can from the car, and miners of many years experience testified they had never known a similar occurrence. The servant, Vickers, whose duty it was to place the can on the car and to push it back to the mine, and who was thus employed, makes no satisfactory explanation of the occurrence. He says nothing of the kind had ever occurred before and while he stated that he *reckoned* he was doing the work in the usual and ordinary way, he may have given the can a twist, but he did not know he had done so, and he could not account for the occurrence. We think this testimony warranted the finding by the jury that some negligence on the part of Vickers caused the injury and that this was not one of the assumed risks.

It is insisted also that appellee was guilty of contributory negligence. The jury might have found, however, that inasmuch as the contents of the can had been discharged, that appellee was not guilty of negligence in returning to his work, as it was shown that this was the practice of experienced miners. But the finding that plaintiff was guilty of contributory negligence would only have reduced the amount of the recovery proportionately, and the jury was properly so charged.

We conclude therefore that the testimony supports the verdict.

(2)    The instruction, numbered one, given over the objection of the appellant, told the jury that "if the defendant negligently let fall a large can upon him (appellee) and that by reason thereof he was injured, that the carelessness, negligence or recklessness on the part of any of the employees would be the negligence of the defendant in respect to the act charged." It is argued that the effect of this instruction is to eliminate from the consideration of the jury the question of assumption of risk and contributory negligence and to warrant a verdict in appellee's favor upon the mere finding that appellant was guilty of negligence. Such, however, is not the effect of the instruction. It merely states a condition under which the finding of negligence could be made against the appellant and was a proper declaration of the law in that respect.

In an instruction, numbered two, the jury was told that it was appellant's duty to use ordinary care in furnishing appellee with a reasonably safe place in which to work and to use ordinary care and prudence to prevent injury to him while engaged in such work, and that a failure to discharge this duty would constitute negligence on the part of appellant and would permit appellee to recover by reason of any injuries resulting therefrom. It is argued that this instruction is erroneous as excluding the doctrine of assumption of risk, and so it would be if it stood alone and was not to be read in connection with the other instructions. The court told the jury, however, that the instructions were to be read and considered as a whole and an instruction, numbered three which dealt with the question of assumption of risk, immediately followed the instruction numbered two and is separated from it only by the numeral "3." These instructions appear in juxtaposition and are to be read, therefore, as if they were paragraphs of the same instruction. *St. L., I. M. & S. Ry. Co.* v. *Rogers,* 93 Ark. 564; *The Citizens Bank* v. *Fairweather,* 127 Ark. 67.

Appellee requested the court to give instruction numbered 8, which reads as follows:

"While it is true the plaintiff assumed all the risks that were ordinarily and usually incident to the service in which he was engaged, yet he did not assume the risk of any negligence on the part of the defendant or its employees. In the absence of knowledge on his part, the plaintiff had the right to presume that the defendant had performed the duties that devolved upon him. One of the duties imposed upon the defendant by law was to exercise ordinary care to provide the plaintiff a reasonably safe place in which to work. An employer is bound to exercise ordinary care in furnishing a safe place to his servant to work, whether it is of a simple character, or whether it is dangerously situated. (Therefore, if you find from the evidence that the plaintiff's injury was caused by reason of an unsafe place furnished to said plaintiff by the defendant, in which to work, and that plaintiff did not know of its unsafe condition prior to the time of the alleged happening of the injury, your verdict will be for the plaintiff").

(3)    The court gave this instruction after striking out the last clause, which is enclosed in parenthesis, and appellant excepted to this modification. The excluded portion of the instruction makes the application of the law as announced in the first part thereof. The instruction was improper, as submitting the question of the duty to furnish a safe place, but the objection was not made to it on that account, and it was not prejudicial, even though it was improper, because it was the alleged negligence of Vickers which made the place unsafe. This instruction tells the jury that if the place was unsafe because of the dangers ordinarily and usually incident to the employment in which appellee was engaged that these risks were assumed, but it says that appellee did not assume the risk of any negligence on the part of the defendant (appellant), or any of its employees. That qualification was not improper under the facts of this case, because the negligence which caused the injury

was not some continuing act or condition of which the appellee had knowledge and of which, notwithstanding his knowledge, he entered into or continued in the employment. *Johnson* v. *Plunkett-Jarrell Grocer Co.,* 127 Ark. 243.

The instruction, numbered ten, given at the request of appellee, dealt with the question of warning and told the jury that if the custom obtained of giving warning and none was given, that appellee would not be guilty of contributory negligence, "unless the jury, by the preponderance of the testimony on the part of the defendant, finds that he failed to use such care and vigilance in discovering his peril and avoiding his injury as was consistent with the performance of the work in which he was engaged." It is now urged that this instruction was erroneous in limiting the consideration of the jury to the testimony of the defendant in determining whether appellee had been guilty of contributory negligence. But only a general objection was made to the instruction, which was a lengthy one. A specific objection to this instruction would, no doubt, have led to a correction of the instruction which would have permitted a consideration of all the testimony in the case in determining whether appellee was guilty of contributory negligence, and, in the absence of this specific objection, we must hold that the error was not prejudicial. *Little Rock Railway, etc., Co.* v. *Doyle,* 79 Ark. 378.

An instruction, numbered 4, requested by appellant, was properly refused because it was predicated upon the assumption of an equal knowledge of danger on the part of both appellant and appellee. There is no testimony to show that appellee knew or could have known that Vickers would be guilty of a negligent act in handling the can, for this was the cause of the injury.

An instruction, numbered 9, requested by appellant, told the jury that if appellee resumed his work in disregard of a warning which would have saved him from **injury had it been heeded,** that he assumed the risk of the injury against which the warning was given. **This**

instruction was properly refused, because the undisputed evidence is that appellee obeyed the warning given, that is that a can of ore was on its way to the tipple, and, further, that the injury was not occasioned by the danger of which the warning was given.

Other questions are discussed but they are disposed of by what we have already said. Finding no prejudicial error, the judgment is affirmed.