## St. Louis, Iron Mountain & Southern Railway Company *v.* Corman.

### Opinion delivered October 25, 1909.

1. Death—Action for causing—Venue.—An action to recover damages for a negligent killing is transitory, and can be maintained in this State, though the killing took place elsewhere, but the rights of the

parties must be determined in accordance with the laws of the place where the killing occurred. (Page 107.)

2.  SAME—PARTIES.—Where there were no personal representatives of a deceased person, an action to recover damages for his negligent killing in the Indian Territory could be brought in this State by his widow and children without joining his administrator under Kirby's Digest, § 6289, which was in force in that Territory. (Page 107.)

3.  MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—In a suit against a railway company for negligently causing the death of an employee, proof that defendant kept empty cars upon a storage track having a descending grade toward the main track, that these cars were not blocked and their brakes were out of order, that there was no derailing device to prevent the cars from rolling upon the main track, and that certain cars were negligently started, and ran upon the main track, and caused the death of plaintiff's intestate, was sufficient to justify a finding that defendant was negligent. (Page 107.)

4.  SAME—ASSUMPTION OF RISK.—While an employee, by his contract of service, impliedly agrees to assume and bear the risk of all dangers from the ordinary incidents of the service, he does not assume the risk arising from negligent acts of the employer unless, after he becomes aware of such negligence and appreciates the danger arising therefrom, he exposes himself to it by continuing in the service. (Page 108.)

5.  SAME—ASSUMED RISK.—When one enters into a contract to perform service for another, he agrees to work at the place expressly or impliedly designated in the contract and with the tools and appliances regularly furnished by the master for use, so far as these things are open and readily ascertainable upon inquiry. (Page 109.)

6.  SAME.—While a railroad employee is bound to take notice of the general plan of construction adopted in building the roadbed of such railroad, he is not bound to assume that a device especially needed at a particularly dangerous place had not been installed; it being a question for the jury in such case whether he knew that the particular device was not in use at the particular place. (Page 110.)

7.  SAME—CONCURRING NEGLIGENCE OF MASTER AND FELLOW SERVANT.—A servant is entitled to recover for the negligence of the master, even though the negligence of fellow servants concurred therein, if the injury would not have occurred but for the master's negligence. (Page 111.)

Appeal from Franklin Circuit Court, Ozark District; *Jeptha H. Evans,* Judge; affirmed.

### STATEMENT BY THE COURT.

Murray L. Corman was a brakeman in the employ of the defendant railway company, and was killed by the derailment

of an engine on which he was riding, in the discharge of his duties, on August 9, 1907, at Wagoner, I. T. The engine was pulling a local freight train, and was approaching Wagoner, and was within the yard limits. Corman was on the running board of the engine, preparing to go down on the pilot for the purpose of operating a switch for the train to go in upon a siding. There was another track used as a passing and storage track —principally the latter—and a few minutes before Corman's engine reached the north end of the track some ballast cars standing on this track were struck and put in motion by other cars handled by the crew of another train. These cars rolled down the descending grade of the storage track to the end and out upon the main track, and collided with Corman's engine, while he was on it, overturning the engine and crushing him to death.

This passing and storage track was about 2,500 feet long, and had a decided grade in each direction, the summit of the grade being about in the middle. The grade each way was steep enough that cars when once put in motion would roll to the end. There was no derailing device of any kind at the end of this track to prevent cars from rolling upon the main track. There were fifteen or twenty or twenty-five of the ballast cars standing on the storage track, and the brakes on them were not in working order. When they were put in motion, a brakeman who was a member of the other train crew mounted the string of cars and tried to put on brakes so as to stop them, but on account of the brakes not working he failed to accomplish this. It is shown that in loading the ballast cars with a steam shovel gravel would get in the ratchets of the brakes, thereby preventing their use. It is also shown that the brakes on some of them were out of working order in other respects.

The present action was instituted in the circuit court of Crawford County by Emma Corman, the widow, and Murray Corman, an infant child and sole heir-at-law of Murray L. Corman, deceased, to recover damages sustained by them as such widow and next of kin on account of the death of said decedent. There was no administration upon the estate.

The complaint sets forth two charges of negligence against the defendant which are alleged to have been the proximate cause of Corman's death: one, that the defendant was guilty of neg-

ligence in failing to have a derailing device at the end of the storage track so as to prevent cars from rolling down the grade from that track upon the main track; and the other, that the defendant was negligent in permitting cars on which the brakes were out of repair to be left on the storage track.

The defendant in its answer denied the charges of negligence, and pleaded that Corman was guilty of contributory negligence, and also that he had assumed the risk. .

The jury returned a verdict in favor of the plaintiff, assessing the damages. at $10,000. Judgment was rendered accordingly, and the defendant appealed. Other facts tending to explain the points at issue will be stated in the opinion.

*Lovick P. Miles,* for appellant.

1.   Under the evidence, and the rule in 79 Ark. 62, this action could not be maintained in the absence of an administration, or the joinder of all persons related who might have a cause of action.   76 Ark. 555; 51 *Id.* 509.

2.   No negligence was shown upon which, under the law of the Indian Territory, a recovery could be sustained, and instructions 3 and 6 asked by defendant should have been given.   87 Ark. 471; 77 *Id.* 109; *Ib.* 261; 85 Ark. 532; 79 *Id.* 225.   There was no question of the master's negligence to be submitted to the jury.

3.   The risk of the absence of a derailing device was assumed by defendant.   82 Ark. 11; 54 *Id.* 389; 48 *Id.* 333; 60 *Id.* 438; 65 *Id.* 98; 77 *Id.* 367, 458; 1 Labatt, Master & Serv., § 388-404; Dresser on Employers' Liability, § § 92, 95; 77 Ill. 365; 168 Mass. 517; 161 Mass. 153; 108 Mich. 690; 97 *Id.* 265; 63 Iowa 562; 132 N. Y. 228.

4.   It was the omission of fellow-servants which caused the injury.   42 Ark. 417; 82 *Id.* 334.

*Robert J. White,* for appellee.

1.   The father and mother were not necessary parties, and should not have been plaintiffs.   Kirby's Dig., § § 6289, 6290. The widow and sole heirs were the only necessary parties.   *Id.* § 2636; 10 N. E. 75; 79 Ark. 65; 95 N. Y. 17-24; 47 Ark. 1; 28 W. Va. 412-465; 39 Oh. St. 368-374; 5 Cal. 63; 56 N. J. L. 309; 28 How. Pr. (N. Y.) 417; 132 N. C. 115.

2. Negligence was shown, and the fellow-servant rule does not apply to this case. Buswell on Pers. Inj., pp. 314-15; 87 Ark. 219; 79 Id. 437. The duty rests on the master to furnish a safe place to work, and this duty cannot be delegated. 87 Ark. 324; 54 Id. 289; 81 Id. 324; 79 Id. 20; Bish., Non-Cont. Law, § § 652, 647-657.

3. Deceased did not assume the risk. 82 Ark. 11; 77 Ark. 367; 67 Ark. 217. In this case it was a question for the jury. 87 Ark. 444.

4. On the question of liability for undertaking to require conductors and brakemen to perform non-assignable master's duties, see 67 Ark. 377; Ib. 209; 87 Ark. 321; Ib. 271, 306; 77 Ib. 1; Ib. 367.

McCulloch, C. J., (after stating the facts). It is contended that the plaintiff cannot maintain this action, and that it can be maintained only by an administrator of the decedent's estate. This question was attempted to be raised by a demurrer to the complaint on the alleged ground that the plaintiff was without legal capacity to sue. It was also shown by evidence that the parents of said decedent were living, and the contention is made that they might, as such parents, claim damages by reason of the death of their son, and that the suit should therefore have been brought by an administrator.

The statutes of Arkansas (secs. 6289-6290, Kirby's Digest), embodying the principles of the English statute known as Lord Campbell's Act, were in force in the Indian Territory when the injury in question occurred. One section of this statute reads as follows:

"Every such action shall be brought by, and in the name of, the personal representative of such deceased person, and, if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and, in every such action, the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary

injuries resulting from such death, to the wife and next of kin of such deceased person. Provided, every such action shall be commenced within two years after the death of such person." (Public Acts, First Session of 51st Congress, p. 94, § 31.)

This statute creates two causes of action—one for the benefit of the estate, to recover damages which the decedent could have recovered had he survived the accident, and the other for the benefit of the widow and next of kin, for the damages which they sustained by reason of the death. *Davis* v. *Railway Co.,* 53 Ark. 117. The present action falls within the last-named class. It is a transitory action, and can be maintained in this State, but the rights of the parties must be determined in accordance with the law of the place where the injury occurred. *St. Louis, I. M. & S. Ry. Co.* v. *Haist,* 71 Ark. 258.

Now, the statute provides that, "if there be no personal representatives, then the action may be brought by the heirs at law of such deceased person." Who, then, constitute the heirs at law? The widow is one within the meaning of the statute, for she receives a distributive portion of the recovery. *McBride* v. *Berman,* 79 Ark. 62. The child is the only other heir at law, and by the plain letter of the statute is the only other person who is a necessary party to the action.

Nothing is found in the decision in the case of *McBride* v. *Berman, supra,* which militates against this conclusion. The action in that case was instituted by the widow alone, without joining the collateral heirs at law, there being no children of the decedent.

Was the defendant company guilty of negligence in failing to install a derailing device so as to keep the cars from rolling off the storage track, and, if so, did Corman assume the risk of the danger to which he was exposed by reason thereof?

In considering the question of negligence, all the facts must be kept in mind. This was a track used not only for trains to pass, but it was used mainly for the storage of cars. On it a large number of cars were stored daily, and among them was a considerable number of empty ballast cars with brakes out of order. It was the custom to store these cars there, and the ordinary use of them in loading them with dirt and gravel for ballast necessarily put the handbrakes out of service on account

of gravel lodging in the ratchets of the brakes. These cars were habitually left on the track in bunches, and on a steep grade which would cause them, when once put in motion, to roll to the end of the storage track and on the main track, unless brakes were put on. The ordinary condition in which the brakes were left made it impossible for cars to be stopped when once put in motion, for it appears from the evidence that on the particular occasion in question a brakeman of the other train crew made every effort to stop the cars, but failed because the hand brakes could not be worked.

We are clearly of the opinion that these facts presented a situation which warranted the jury in finding that defendant was guilty of negligence in failing to exercise reasonable care to furnish a safe place to its employees at which to do their accustomed work. The situation thus described was a dangerous one —at least the jury was warranted in finding that to be so—and defendant did not discharge its full duty to its employees merely by providing a system of rules requiring trainmen, when they stored cars on the track, to see that the brakes on them were set or that the wheels were blocked. Some device ought to have been installed to prevent the escape of these cars from the storage track, if they should be put in motion, for it was obvious to any one that when once started down the grade they would roll to the end and go out on the main track, where they would be likely to collide with trains. This is precisely what occurred when Corman was killed, and it was a catastrophe which could have been anticipated by an employer who was exercising the care of a reasonably prudent person for the safety of employees.

Nor can we hold, as a matter of law, which learned counsel for appellant insist we should hold, that under the circumstances of this case Corman assumed the risk. That was a question of fact for the jury to determine, instead of a question of law for the court to decide, as the evidence presented a condition of affairs from which different minds might reach different conclusions. An employee, by his contract of service, impliedly agrees to assume and bear the risk of all dangers from the ordinary incidents of the service, but these do not include the dangers arising from negligent acts of his employer, unless, after he becomes aware of such negligence and appreciates the danger arising therefrom, he exposes himself to it by continuing in the

service.  Of course, if a person of ordinary intelligence is aware of a danger, he is presumed to appreciate it; but it does not necessarily follow that because one becomes aware of a negligent act he appreciates the danger arising therefrom.  This may, under some circumstances, be a question of fact to be determined by a trial jury, unless the danger is obvious, in which case a person of average experience and intelligence, being shown to be aware of the negligent act, is presumed to appreciate an obvious danger arising therefrom.  But it is not correct to say that an employee assumes the risk of danger arising from negligent acts of his employer merely because he could, by the exercise of ordinary care, have discovered the defect brought about by such negligence.  This might constitute contributory negligence of an employee in failing to discover a defect, but it would not be an assumption of risk, for the doctrine of assumed risk is based upon and grows out of contract; and, before it can be said that the employee has assumed the risk of danger caused by his employer's negligence, it must appear that he was aware of the negligence and appreciated the danger.  *St. Louis, I. M. & S. Ry. Co.* v. *Birch,* 89 Ark. 424; *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark 367.

We are not now speaking of the ordinary conditions of the service as existing when the employee took service, for of these he must take notice.  When he enters into a contract to perform service for his employer, he agrees to work at the place expressly or impliedly designated in the contract, and with the tools and appliances regularly furnished by the master for use, "so far as these things were open and obvious, so that they could readily be ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and perils of the service in which he was about to engage." *Rooney* v. *Sewall & Day Cordage Co.,* 161 Mass. 153; *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11.

A familiar illustration of this is the general use of or failure to use unblocked frogs in the operation of railroads.  It is obvious to any employee whether or not the plan of blocking frogs at switches has been adopted, and one who takes service for the purpose of engaging in the operation of trains must take notice of that which is obvious to all.

Learned counsel insist that, because we have held in *Choctaw, O. & G. Rd. Co.* v. *Thompson, supra,* and in other cases, that a railroad employee must take notice of the use of unblocked frogs, we should hold, in necessary consequence, that ·he must take notice of the failure to use a derailing device on each side track along the entire line of road where they work. This does not follow, for we think it would be unreasonable and unjust to say, as a matter of law, that railroad trainmen must take notice and be deemed to have contracted to assume the risk of every defect existing along the entire line of road which is obvious to one working at the particular place where it exists. To illustrate: To a switchman working daily in a certain yard the defective condition of a certain switch would be obvious; but not so to a brakeman who passes through the yard on his regular trip without using this particular switch.

Nor is the failure, generally, as a plan of operation, to use derailing devices comparable with the use of unblocked frogs. If the unblocking of frogs is due to the general plan of construction which is adopted along the line of the road, an employee would have to take notice of the fact of the general plan of construction adopted; but the exercise of· ordinary care might require the use of a derailing ·device at some particular dangerous place, even though the general plan of construction did not include the use of any such, device, and an employee, who is bound to take notice of the general plan of construction would not necessarily be bound to assume that a device especially needed · at a particularly dangerous place had not been installed. It would be a question of fact for the determination of a jury, under all the circumstances of the case, whether or not the employee knew that the device was not used at the particular place.

But it does not even appear in this case, from the evidence, that derailing devices were not adopted at all on the line of road along which Corman worked. On the contrary, it affirmatively appears that they were used at some places along the line. It is true that the evidence shows that they were not used generally at side tracks; but this track was used mainly for storage of cars, and the grade was exceptionally steep. It was an extraordinarily dangerous place, a place of unusual peril to crews of passing trains, on account of the circumstances described.

Whether Corman knew that no derailing device was in use at this place, or whether he should have inferred from the fact that they were not used at other passing tracks that none was used at that place, was peculiarly a question for the determination of a jury. There was no direct evidence at all that Corman actually knew that no derailer was used there; no evidence that he ever used that track in his work, nor any as to the length of time he had been working along that division of the road. He was not using the track at the time of the injury. We conclude, therefore, that the evidence warranted a finding that Corman did not assume the risk.

We are also of the opinion that there was sufficient evidence to warrant the submission to the jury of the question whether or not the defendant was guilty of negligence in allowing the ballast cars with defective brakes to be habitually left standing on this storage track, where there was no derailer. Even if the negligence of the fellow servants of Corman concurred with that of the master in causing the injury, the latter is responsible, for it is plain that, but for the absence of the derailing device, the injury would not have occurred. *Chicago Mill & Lbr. Co.* v. *Cooper,* 90 Ark. 326.

The giving and refusal of instructions is complained of as error, but it is not necessary to discuss these assignments further than to say that the several rulings of the court and the instructions referred to violate no principle herein announced, and we find no error in them.

Judgment affirmed.