MACKAY TELEGRAPH & CABLE COMPANY v. ROWLAND.

Opinion delivered December 15, 1913.

1. NEGLIGENCE—PROXIMATE CAUSE OF INJURY—SUFFICIENCY OF EVIDENCE. —In an action for damages against a telegraph company for an injury to plaintiff, an employee, due to the negligent loading and operating of a hand-car, the evidence held sufficient to show negligence in loading and operating the car by defendant's servants, and that such negligence was the proximate cause of plaintiff's injury, that the plaintiff was not guilty of contributory negligence as a matter of law, nor assumed the risks incident to his employment. (Page 460.)

2. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK.—Where plaintiff performed services for the defendant, for which the defendant paid him, although he was not regu-

larly employed by defendant, the defendant and its servants owe him the duty to provide a safe place for him to perform his work, and to abstain from acts of negligence which will cause him injury, and defendant will be liable for an injury to plaintiff due to the negligence of its servants. (Page 462.)

3.  MASTER AND SERVANT—ASSUMPTION OF RISK.—A servant will be held, as a matter of law, to have assumed the risks of his employment only when it appears that he appreciated the danger to which he was about to be exposed, or that the danger was so obvious that a man of ordinary prudence would not continue in the face of it. (Page 463.)

4.  MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.—Where there is negligence on the part of a master, the servant will not be held to have assumed the risk of his employment, merely because of his knowledge of a defect. (Page 463.)

5.  DAMAGES—PERSONAL INJURY—AMOUNT.—Where plaintiff suffered a grievous injury due to the negligence of the defendant, evidence held sufficient to warrant a verdict for substantial damages. (Page 467.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*Marshall & Coffman* and *Mehaffy, Reid & Mehaffy,* for appellant.

1.  Appellee both assumed the risk and was guilty of contributory negligence. By his own testimony he knew just how the car was loaded, and, with a full knowledge of the conditions, voluntarily took a place on the end of a tie outside of the poles—the most dangerous place he could have found. 96 Ark. 206; *Id.* 387; 3 Labatt on Master & Servant (2 ed.), § 1183; 1 *Id.* (1 ed.) § 274-a; 4 *Id.,* § 1310, note 1; 97 Ark. 486; 63 L. R. A. 551; 77 Ark. 373; 101 Ark. 205; 117 S. W. 710.

2.  The court erred in its sixth instruction in charging the jury that appellee did not "assume the risk created at the time of the injury by the negligence of the defendant, its agents or servants, of which he did not know," etc., because there is no evidence on which to base such an instruction. Appellee was thoroughly familiar with the whole situation. Moreover, the instruction assumes that there was a risk created at the time by the

negligence of the master. 93 Ark. 29; 71 Ark. 39; 75 Ark. 76. The instruction was in conflict with other instructions. 99 Ark. 377; 100 Ark. 433.

*Davis & Pace,* for appellee.

1. The court properly refused to direct a verdict for the appellant. It is established by the evidence that it was no part of appellee's duty to load the car or to operate the same, also that the manner in which the car was loaded and operated was negligent, and was the direct cause of the car being derailed and appellee injured.

There were issues of fact to be determined upon conflicting testimony, and the jury's finding will not be disturbed, there being evidence to support it. 65 Ark. 116; 62 Ark. 225; 67 Ark. 433; 70 Ark. 136; 97 Ark. 86.

2. There was no error in the instructions given. If there were verbal inaccuracies, and there were none so serious as to affect the meaning intended to be conveyed, appellant should have called the court's attention to them specifically. 100 Ark. 269; 98 Ark. 234; *Id.* 362; 65 Ark. 260; 66 Ark. 46.

McCULLOCH, C. J. This is an action instituted by the plaintiff, W. B. Rowland, against defendants, Mackay Telegraph & Cable Company and the Chicago, Rock Island & Pacific Railway Company, to recover compensation for injuries received by plaintiff on March 21, 1912, while he was riding on a hand-car loaded with telegraph poles.

The hand-car was being operated by the telegraph company for the purpose of distributing poles to be erected along the right-of-way of the railroad, the railway company having under contract with the telegraph company granted the latter permission to use the tracks and right-of-way for that purpose.

The two defendants were jointly sued, but the allegations of negligence were separate, and on the trial of the case the jury returned a verdict in favor of the plaintiff against the telegraph company, but in favor of the

railway company, and the telegraph company alone has appealed. The railway company being thus eliminated from the case, the questions presented to us for review relate entirely to the liability of the telegraph company.

The telegraph company is a domestic corporation organized for the purpose of constructing and operating a telegraph line in this and other States. It proceeded to erect its lines and poles along the right-of-way of defendant railway company, and the two corporations entered into a written contract whereby the right to do so was granted to the telegraph company, and the railway company agreed, for a stipulated price, to furnish an engine and a crew for the purpose of distributing material along the line. It was also agreed in the contract that the telegraph company could use hand-cars, push-cars and motor-cars, as it might find necessary to do so, in the construction of the line, but under the proviso that "all such hand, push or motor cars shall, whenever in service, be in charge of a pilot to be furnished by the railroad company at the entire expense of the telegraph company, the movements of the same to be subject to the reasonable regulations of the railroad company." The contract also contained a clause whereby the telegraph company undertook to "indemnify and save harmless the railroad company from or on account of any and all liability * * * for any injury to or death of the servants or employees of the telegraph company, or of the railroad company, or of any other person or corporation, which shall arise out of or in any manner be caused by the operation of any such train service, or the distribution of any such material, or in the use or operation of any hand, push or motor cars upon the premises of the railroad company, whether such liability shall in any case be due to the negligence, in whole or in part, of any of the railroad company's employees, irrespective of capacity in which serving, or otherwise."

Plaintiff was a conductor employed by the railway company and was, on December 14, 1911, designated by his superior to accompany the force of workmen in

charge of constructing the telegraph line as pilot of a hand-car used in distributing poles. He worked in that capacity from then until the date of his injury on March 21, 1912. The crew of the telegraph company was composed of a foreman and four workmen, and they took the car to Hot Springs for the purpose of getting a load of telegraph poles to distribute along the line of the railroad. Six poles, twenty-five feet long, were loaded on the hand-car, three poles being placed on each side of the handle bars and were wired in that position, the wires passing around the bed of the car so as to fasten them to the car. A railroad tie was placed under the poles at each end of the hand-car, and a place was arranged in front on which the plaintiff was to ride. Plaintiff took his position and the crew proceeded out of Hot Springs running the hand-car and had proceeded about a mile, and were going downhill, when the car was derailed and threw plaintiff to the ground, inflicting serious injury.

Damages were awarded by the jury in the sum of $13,000.

The evidence tended to show that the car, at the time of the derailment, had attained a speed of about ten miles an hour, which caused the poles to sway or "weave," as some of the witnesses termed it, and the force thereof caused the rocking of the car. At the place of the derailment there was a slight defect or "low-joint" in the track, and negligence of the railway company is charged in permitting the track to get out of repair. However, as the verdict of the jury has exonerated the railway company from the charge of negligence, that feature of the case calls for no further discussion.

Negligence of the telegraph company is alleged in the defective loading of the car, and also in the operation of the car downhill at a high rate of speed.

The evidence is, we think, sufficient to establish the charge of negligence in both respects, and that the acts of negligence in either or both of those respects consti-

tuted the proximate and efficient cause of plaintiff's injury.

The witnesses testified that it was generally the custom to wire the poles together, but not to wire them to the car, and some of them testified that the wiring to the car rendered it dangerous in operating the car, especially at a high rate of speed. It is not an unreasonable conclusion that the lashing of heavy and lengthy telegraph poles to the car formed a union that would cause the car to follow the movements of the telegraph poles, and the jury had a right to draw a deduction that this was not the exercise of ordinary care.

There was abundant evidence that it was dangerous to run a hand-car, loaded in that way, at a speed of more than four or five miles an hour, and the testimony was sufficient to warrant the finding that this car was allowed to attain a speed of ten miles an hour running down grade.

The real questions in the case relate to the responsibility for these conditions, and the further questions of negligence and assumed risk on the part of the plaintiff which would prevent his recovering compensation for his injuries.

It is earnestly insisted by learned counsel for the defendant telegraph company that the evidence is insufficient to sustain the verdict, and that the court should have given a peremptory instruction in the case in its favor. This is the principal question presented to us, and the solution of it practically settles the case.

The contention of the telegraph company is that the plaintiff was in charge of the car, and controlled, not only the loading of it, but the method of operation, and that he alone is responsible for the derailment which caused his injury, if it resulted from negligence, and not from mere accident.

We are, however, of the opinion that the evidence was sufficient to warrant the finding contrary to that contention. The contract between the two corporations designated the person to be sent out by the railway com-

pany to accompany the hand-car as a "pilot." The contract itself does not undertake to specifically define his duties, but the obvious purpose was for a man to accompany the crew who was competent to protect the property of the railway company and prevent collisions. The evidence establishes the duty of the plaintiff with respect to the operation of the hand-car. While he was a conductor in the employ of the railway company, and continued in that rank while performing service for the telegraph company, he was sent there to act merely as a pilot, with such duties only as that term implies, and with specific instructions concerning his duties. He was to inform himself of the schedule of the railroad trains so as to keep the hand-car crew informed thereof. He was also to keep a lookout for approaching trains so as to give warning to the hand-car crew in time to remove the car and prevent interference or collision with trains. He had nothing to do, according to the testimony, with the method of loading the car or the operation of the car. His only control over the movement was to say when they should start or stop, so as to keep out of the way of railroad trains. He was sent there to perform this service by the railway company, but the service was performed, in fact, for the telegraph company, and the latter paid for his services. But, regardless of his relation to the two corporations, whether he is to be treated as the servant of the telegraph company or not, he was undoubtedly performing service for its benefit, and the duty rested upon that company and its servants to provide a safe place for him to perform his service and to abstain from acts of negligence which would cause his injury. The telegraph company is undoubtedly liable, under the doctrine of *respondeat superior,* for any acts of negligence of its own servants which caused the plaintiff's injury.

We are, therefore, of the opinion that the evidence was sufficient to show that the acts of negligence in the respects hereinbefore indicated were those of the foreman of the crew of men employed by the telegraph com-

pany, and that the latter is responsible for the injury unless the plaintiff himself assumed the risk of the danger, or was himself guilty of contributory negligence.

The law applicable to those questions is so well-settled that further statement of it is scarcely necessary.

It is contended that, as the plaintiff saw the car loaded, he knew as much about the alleged defects and dangers therefrom as the servants of the telegraph company, and that, therefore, by continuing in the service, he assumed the risk of the danger.

This does not necessarily follow, and we do not think that it can be said, as a matter of law, that plaintiff is deemed to have assumed the risk because he witnessed the loading of the car, and knew the condition it was in. Before it can be said, as a matter of law, that he assumed the risk, it would be necessary to find, either that the plaintiff appreciated the danger, or that the danger was so obvious that a man of ordinary prudence would not continue in the face of it, in which latter event he would be guilty of contributory negligence, and would also be deemed to have assumed the risk.

Mere knowledge of the defect is not sufficient to involve an assumption of the risk where there is negligence on the part of the master; but, as before stated, there must, either be appreciation of the danger, or what is the same thing, the danger must be so obvious that all persons of ordinary intelligence are presumed to have appreciated it, and a person of ordinary prudence would not have proceeded in the face of it.

"Where the servant is aware of the defect, and the danger is so imminent and obvious that a person of ordinary prudence would not continue in the work, he not only assumes the risk, but is guilty of contributory negligence. This is where the doctrine of contributory negligence and of assumed risk approximate so that they are indistinguishable." *A. L. Clark Lumber Co.* v. *Johns,* 98 Ark. 211.

In declaring this phase of the law, we said in a recent case: "Of course, if a person of ordinary intelli-

gence is aware of a danger, he is presumed to appreciate it; but it does not necessarily follow that because one becomes aware of a negligent act, he appreciates the danger arising therefrom.  This may, under some circumstances, be a question of fact to be determined by a trial jury, unless the danger is obvious, in which case a person of average experience and intelligence, being shown to be aware of the negligent act, is presumed to appreciate an obvious danger arising therefrom.  But it is not correct to say that an employee assumes the risk of danger arising from negligent acts of his employer merely because he could, by the exercise of ordinary care, have discovered the defect brought about by such negligence.  This might constitute contributory negligence of an employee in failing to discover a defect, but it would not be an assumption of risk, for the doctrine of assumed risk is based upon and grows out of contract, and, before it can be said that the employee has assumed the risk of danger caused by his employer's negligence, it must appear that he was aware of the negligence and appreciated the danger."  *St. Louis, I. M. & S. Ry. Co.* v. *Corman,* 92 Ark. 102.

The plaintiff is, for aught that appears to the contrary in this record, a man of ordinary intelligence and is experienced in the railroad business.  It is not shown that he had any particular experience in loading and handling hand cars, or that he had any technical knowledge on that subject.  He does state in his testimony that during the time he had been at work there, this was the first occasion on which poles had been lashed to the hand car.  Different minds might draw different inferences as to the danger of loading the car in that way, but it can not be said as a matter of law that the danger was so obvious that any man who knew the manner in which the car was loaded was guilty of contributory negligence, or assumed the risk, in riding on the car loaded in that manner.  Nor is it correct to say that, because the opportunities of observing the manner of loading the car and of discovering the danger therefrom were open equally to

the plaintiff and the foreman who had charge of the car, for that reason, if the foreman was guilty of negligence, the plaintiff was likewise guilty, and also assumed the risk. As the plaintiff did not have charge of the car, the test of his responsibility is different from that of the foreman of the crew, upon whom rested the duty of determining how the car should be loaded. There was the affirmative duty resting upon him to exercise ordinary care to see that the car was properly loaded, whereas the only duty resting upon plaintiff was to take notice of things that were obvious. He had the right, to some extent, to rely upon the judgment of the man who was charged with the duty of properly loading the car, though this did not absolve him from the duty of exercising ordinary care for his own safety. *Chicago, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367. Any other test would prevent a servant, in all cases, from recovering compensation for injuries caused by negligence of the master, or of other servants, for, if you apply the same test to both, the servant would be guilty of contributory negligence in all cases where the master was guilty of negligence.

Now, in this case, the jury had a right to draw the conclusion from the facts proved that the foreman who had charge of the loading of the car was guilty of negligence in the method of loading it, but that the plaintiff, though he was aware of the defect, did not appreciate the danger, and that the danger was not so obvious that a man of ordinary prudence would not have ridden on the car loaded in that manner.

The same may be said of the question of the speed of the car, for, as we have already shown, the plaintiff did not control the speed of the car and was not responsible for it. Nor did he continue in his work after knowledge that the car was being run at an excessive speed. His testimony shows that, as soon as the car attained a high rate of speed, he turned around to look back at the foreman, whose duty it was, not only to regulate the speed, but also to remain at the brake so that he could control it. The injury followed so closely thereafter that

there was no interval during which it can be said that the plaintiff was either guilty of contributory negligence or that he assumed the risk of the danger. In other words, the injury resulted immediately from the exposure to the danger, and no opportunity was afforded plaintiff to extricate himself from the perilous situation brought about by the negligence of the foreman in permitting the car to attain a dangerous speed.

Our conclusion, therefore, is that the court was correct in refusing to give a peremptory instruction in favor of the defendant, for there was enough to go to the jury, not only on the question of negligence of the foreman of the hand car crew, but also on the questions of contributory negligence and assumption of risk on the part of the plaintiff.

There are numerous assignments of error in giving and refusing instructions.

One of the assignments is that the court erred in giving an instruction—the one numbered 6—embracing a statement that plaintiff did not assume the risk created "at the time of the injury by the negligence of the defendant, its agents or servants, of which he did not know, and if his injury was the result of such negligence of the agents or servants of the defendant, then he did not assume such risk." It is insisted that plaintiff necessarily knew of the negligent act at the time of the commission thereof, both with respect to loading the car and the excessive speed, and that that question should not have been submitted to the jury.

The question, as we have heretofore shown, is not so much whether the plaintiff actually knew of the negligent act in loading the car, but whether he appreciated the danger thereof so as to be deemed to have assumed the risk. He undoubtedly knew how the car was loaded, though he may not have appreciated the danger arising therefrom. We scarcely see how the submission of that question could have worked any prejudice to appellant's rights. But a complete answer to the contention is that this instruction was peculiarly applicable to the charge

of negligence against the railway company of permitting its tracks to get out of repair, and was an appropriate instruction on that phase of the case. If counsel for defendant conceived that it might have a prejudicial effect upon the jury in considering the question of negligence of servants of the telegraph company in loading the car, the court should have been asked to have limited the language to a consideration of the charge of negligence against the railway company. In either view of the case we discover no prejudicial effect which could have resulted, and the case will not be reversed, even though the instruction was abstract so far as concerns the charge of negligence against the telegraph company.

The correctness of the second instruction given at the instance of the appellee is assailed on the ground that it ignores the questions of contributory negligence and assumed risk.

But examination of the instruction discloses that, it not only does not ignore those questions, but that it expressly limits the rights of plaintiff to recover if it be found that he has assumed the risk or was guilty of contributory negligence.

The correctness of this and other instructions is challenged on other grounds, but a careful reading of all the instructions convinces us that, while some of them are open to the charge of verbal inaccuracies, none of them contains misstatements of the law, and there is nothing in any of them which operates improperly to the prejudice of the defendant. The charge of the court as a whole correctly placed before the jury the law of the case, and we find no error which calls for a reversal.

It is further insisted that the amount of damages assessed by the jury is excessive. But our conclusion on that feature of the case is that plaintiff suffered a grievous injury and that the evidence is sufficient to warrant the recovery of the sum awarded by the jury. The judgment is, therefore, affirmed.